1
2
3
4            **UNITED STATES DISTRICT COURT**
5               **DISTRICT OF NEVADA**
6                      * * *
7    MICHAEL COOK,                         Case No. 2:22-cv-01940-RFB-EJY
8              Plaintiff,                              **ORDER**
9         v.
10   ADAM LINGENFELTER, *et al.*,
11             Defendants.
12

13       Before the Court is Defendants' Adam Lingenfelter and Lingenfelter Custom Homes LLC

14   ("LCH") (ECF No. 27) renewed Motion to Dismiss for lack of personal jurisdiction or in the

15   alternative to transfer venue. Because the Court lacks personal jurisdiction over Defendants, the

16   Court grants the Motion to Dismiss with prejudice.

17

18       **I.     PROCEDURAL BACKGROUND**

19       The Court only recites the procedural history relevant to the instant Motion.

20       On October 21, 2022, Plaintiff filed his Complaint in state court, and on November 16,

21   2022, Defendants removed the case to this Court. (ECF No. 1). On November 23, 2022,

22   Defendants filed a Motion to Dismiss for lack of personal jurisdiction or in the alternative to

23   transfer venue. (ECF No. 5). It was fully briefed. (ECF Nos. 10, 12). On June 8, 2023, the Court

24   held a hearing on the Motion to Dismiss and denied the Motion without prejudice, ordering

25   jurisdictional discovery limited to the deposition of Defendant Adam Lingenfelter. (ECF No. 21).

26   On July 31, 2023, Defendants filed a renewed Motion to Dismiss for lack of personal jurisdiction

27   or in the alternative to transfer venue. (ECF No. 27). The Motion was fully briefed. (ECF Nos. 32-

28   33). The Court's Order on the instant Motion follows.

1

2

3        II.      FACTUAL BACKGROUND

4                The Court makes the following factual findings relevant to jurisdiction.

5                Plaintiff, a Nevada resident, brings this lawsuit against Adam Lingenfelter, who is and was

6        at all relevant times a resident of Texas, and Lingenfelter Custom Homes, LLC ("LCH"), a Texas

7        company, whose assets and operations are exclusively in Texas. From May to July 2016, Cook

8        and Lingenfelter exchanged emails regarding a financial pro forma and business plan for LCH,

9        which set forth a plan for the purchase and construction of single-family units in Texas. Financing

10       would be provided by Plaintiff and construction loans through Texas banks, including First

11       National Bank. On July 4, 2015, Lingenfelter sent an email with a draft business plan for LCH and

12       terms to be discussed in an in person meeting the following day. The business plan stated LCH

13       was a newly formed company based in Flower Mount, Texas which would build homes in the

14       surrounding area. It listed Plaintiff as the company's chief investor.

15               On or around July 5, 2016, Lingenfelter travelled to Las Vegas to meet with Plaintiff to

16       negotiate an agreement regarding Plaintiff's investment in Lingenfelter LCH. Plaintiff and

17       Lingenfelter traveled around Las Vegas and viewed homes Plaintiff alleges, and Defendants

18       dispute, that Plaintiff and Lingenfelter reached an agreement while in Las Vegas wherein Plaintiff

19       would acquire 45% of Lingenfelter's personal interest in LCH in the form of housing units in

20       exchange for a capital investment by Plaintiff of 1 million dollars.

21               On July 14, 2016, Lingenfelter sent a draft "Investor Agreement" adapted from an online

22       form which he changed to "fit what we talked about." The draft agreement between Lingenfelter

23       on behalf of LCH and Michael Cook provided that in exchange for an investment by Cook of 1

24       million dollars on July 14, 2016, and $500,000 on March 1, 2017, Cook would receive a 45% split

25       of LCH's net profits. The agreement was set to commence upon receipt of the initial investment.

26       The agreement contained a provision that it would be governed by and construed in accordance

27       with the laws of the state of Texas. This draft agreement is the only written memorialization of the

28       alleged investment agreement and is unsigned by any party.

- 2 -

1    On or around July 16, 2016, Plaintiff wired 1 million dollars to LCH. From September

2    2016 to May 2019 LCH made monthly payments to Plaintiff. Lingenfelter also sent regular updates

3    to Plaintiff regarding the progress of LCH.

4    In his deposition, Plaintiff testified that LCH was not formed until after Lingenfelter

5    received Plaintiff's investment, and that during their negotiations Lingenfelter did not own a

6    building company of any sort, and that the agreement was to form a company called LCH in which

7    Plaintiff would own 45% and Lingenfelter would own 55%. In his complaint and declaration filed

8    in support of his opposition to the instant Motion, Plaintiff claims the agreement was that he would

9    obtain 45% of the membership units owned by Lingenfelter in LCH.

10    In November 2016, Plaintiff's Nevada-based company Outdoor Living Creations, LLC

11    sent an employment agreement purporting to hire Lingenfelter and a $12,500 payroll check.

12    Lingenfelter never performed any services for Outdoor Living Creations and the parties never

13    intended that he would, nor that he would actually be paid as an employee. The sole purpose of

14    the agreement and check was to present to banks for the purpose of Lingenfelter obtaining a

15    personal loan. Plaintiff alleges this loan was for LCH to obtain financing for home construction.

16    On May 17, 2017, Plaintiff sent Lingenfelter an email expressing concern that he had

17    stopped receiving weekly updates, and that he had invested in LCH without any paperwork, and

18    "that also needs to get fixed." Lingenfelter continued to send updates through July 2017.

19    Plaintiff alleges that on October 2018, he contacted Lingenfelter seeking an executed copy

20    of the Investor Agreement. Instead of executing, Lingenfelter sought to renegotiate and reduce

21    Plaintiff's ownership percentage in LCH. After May 2019, Plaintiff alleges Lingenfelter excluded

22    him from LCH's books and records and stopped communicating with Plaintiff. Plaintiff alleges he

23    demanded his ownership of LCH units be formalized in writing and that he continued to receive

24    monthly profits and returns from LCH. In September 2022, Defendants remitted the one million

25    dollars to Plaintiff but refused to honor the alleged agreed upon sale of LCH units.

26

27    III.    LEGAL STANDARD

28    A plaintiff bears the burden of establishing personal jurisdiction. Tuazon v. R.J. Reynolds

1   Tobacco Co., 433 F.3d 1163, 1168 (9th Cir. 2006). Where, as here, the defendant's motion to

2   dismiss is based on written materials rather than an evidentiary hearing, the plaintiff need only

3   make a *prima facie* showing of jurisdictional facts to withstand dismissal. Mavrix Photo, Inc. v.

4   Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011). The *prima facie* standard "is not

5   toothless," however; the plaintiff "cannot simply rest on the bare allegations of [his] complaint."

6   In re Boon Glob. Ltd., 923 F.3d 643, 650 (9th Cir. 2019) (internal quotation marks omitted).

7   Although "uncontroverted allegations in the complaint must be taken as true" and "conflicts

8   between parties over statements contained in affidavits must be resolved in the plaintiff's favor,"

9   Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004), disputed allegations

10  in the complaint that are not supported with evidence or affidavits cannot establish jurisdiction,

11  see In re Boon Glob. Ltd., 023 F.3d at 650.

12

13  **IV.    DISCUSSION**

14          To establish that personal jurisdiction over a defendant is proper, a plaintiff must show (1)

15  that the forum state's long-arm statute confers personal jurisdiction and (2) that the exercise of

16  jurisdiction comports with the constitutional principles of due process. Rio Properties, Inc. v. Rio

17  Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002). Because N.R.S. § 14.065 permits Nevada

18  courts to exercise jurisdiction to the same extent as the Constitution, this Court need only consider

19  the constitutional principles of due process. Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014).

20          It is undisputed that Defendants are citizens of Texas. For the exercise of personal

21  jurisdiction over a defendant who is not present in the forum, due process requires that the

22  defendant "have certain minimum contacts" with the forum state "such that the maintenance of the

23  suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v.

24  Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, (1940)).

25  The Ninth Circuit conducts a three-part inquiry to determine whether a nonresident defendant has

26  such "minimum contacts" with the forum state to warrant the Court's exercise of specific

27  jurisdiction:

28          (1) the defendant must either "purposefully direct his activities" toward the forum or

1    "purposefully avail himself of the privileges of conducting activities in the forum;"

2    (2) the claim must be one which arises out of or relates to the defendant's forum-related

3    activities; and

4    (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it

5    must be reasonable.

6    AMA Multimedia, LLC v. Wanat, 970 F.3d 1201, 1208 (9th Cir. 2020) (quotation marks and

7    internal citations omitted). Plaintiff bears the burden to establish the first two prongs. Id.

8    The first prong requires Plaintiff to establish that Defendants "purposefully directed" their

9    activities at or "purposefully availed" themselves of Nevada. Axiom Foods, Inc. v. Acerchem Int'l,

10    Inc., 874 F.3d 1064, 1068 (9th Cir. 2017) (quotations omitted). "The exact form of jurisdictional

11    inquiry depends on the nature of the claim at issue." Picot v. Weston, 780 F.3d 1206, 1212 (9th

12    Cir. 2015). For claims sounding in contract, the Court generally applies a "purposeful availment"

13    analysis and asks whether a defendant has "purposefully availed himself of the privilege of

14    conducting activities within the forum state, thus invoking the benefits and protections of its laws."

15    Id. at 1211-12 (citations omitted). The Court finds all of Plaintiff's claims arise out of the alleged

16    existence and beach of an investment contract between the parties; the Court thus analyzes specific

17    jurisdiction under the purposeful availment test.

18    As an initial matter, the Court finds from the record that Defendant Lingenfelter acted as

19    an agent of the corporate Defendant LCH, as its sole owner and manager in negotiating the alleged

20    contract with Plaintiff on behalf of LCH.    The Court thus analyzes LCH's contacts through

21    Lingenfelter's contacts with Nevada. Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990) ("For

22    purposes of personal jurisdiction, the actions of an agent are attributable to the principal.").

23    "A contract alone does not automatically establish minimum contacts in the plaintiff's

24    home forum." Boschetto v. Hansing, 539 F.3d 1011, 1017 (9th Cir. 2008). Rather, there must be

25    "actions by the defendant himself that create a 'substantial connection with the forum state."

26    Burger King Corp., 571 U.S. 462, 475 (1985). Merely "random, fortuitous, or attenuated" contacts

27    are not sufficient; rather, Lignenfelter must have "performed some type of affirmative conduct

28    which allows or promotes the transaction of business within the forum state." Sher, 911 F.2d at

1    1362. In determining whether such conduct exists, the Court considers the parties' prior

2    negotiations and contemplated future consequences, along with the terms of the contract, and the

3    parties' actual course of dealing. Burger King Corp., 571 U.S. at 479.

4        Applying this standard, the Court finds Plaintiff has not demonstrated Defendants had

5    sufficient minimum contacts with Nevada to subject them to specific personal jurisdiction. The

6    uncontroverted allegations and evidence show that Lingenfelter traveled to Las Vegas on one

7    occasion to negotiate the terms of and enter into the alleged contract. The Court finds this single

8    visit is insufficient. "Negotiating a contract in the forum, by itself, is not purposeful availment

9    unless the proposed contract envisions a substantial connection with the forum state." Perzow v.

10   Hogeg, 826 Fed. Appx. 615, 617 (9th Cir. 2020); Gray & Co. v. Firstenberg Machinery Co., Inc.

11   (9th Cir. 1990) (the fact a defendant entered the forum state to execute or perform a contract with

12   a resident does not *per se* establish minimum contacts).

13       Moreover, prior negotiations were ongoing and took place over email and telephone while

14   Defendant was in Texas for several months prior to Lingenfelter's single Las Vegas visit. The

15   communications between the parties subsequent to Lingenfelter's visit indicate negotiations as to

16   specific terms were ongoing. Although Defendants sent emails, documents, business plans, had

17   discussions, and sent payments directed at Plaintiff via email, telephone, and wire, while he was

18   residing in Las Vegas, those contacts with Plaintiff were not purposeful contacts with the forum

19   itself. Walden, 571 U.S. at 284 (knowledge that a plaintiff is a forum resident and presumably will

20   suffer injury there is not alone sufficient). Defendants only contact with Nevada was incidental to

21   the transaction and the business plan underlying the lawsuit—"it involved the forum state only

22   because that is where the [plaintiff] happened to reside, but otherwise created no 'substantial

23   connection' or ongoing obligations there." Boschetto, 530 F3d at 1019.

24       As to the substance of the contract and the business relationship it envisioned, the evidence

25   on record indicates that it was directed solely at Texas. The property allegedly purchased, the

26   houses to be developed, and the business itself were all located in Texas, and the terms of the only

27   written document reflecting the agreement selected Texas as the forum where the agreement would

28   be governed and enforced. A "contract is ordinarily but an *intermediate step* serving to tie up prior

1   business negotiations with future consequences which themselves are the real object of the

2   business transaction." <u>Burger King Corp.</u>, 471 U.S. at 462 (emphasis added).  The Court finds that

3   the object of the business transaction, the terms of the contract, and the actual course of dealings

4   were all directed at Texas, and it was the reasonable expectation of the parties that Texas was the

5   proper forum for this action.

6       Finally, the employment agreement Plaintiff cites cannot create personal jurisdiction in this

7   action, because it is undisputed that the agreement was never intended to be performed and did not

8   create an employment relationship between Plaintiff's Nevada business and Lingenfelter. It was

9   solely created for the purpose of obtaining a loan that was at best tangentially related to the

10  substance of the contract at issue here.

11      Accordingly, Plaintiff has failed to meet his burden to establish that Defendants personally

12  availed themselves of "the privilege of conducting activities" in Nevada. <u>Picot</u>, 780 F.3d at 1212.

13  The Court therefore lacks personal jurisdiction over them.

14

15  **V.    CONCLUSION**

16      For the foregoing reasons, **IT IS ORDERED** that Defendants' (ECF No. 27) Motion to

17  Dismiss is **GRANTED**. Because the Court lacks jurisdiction over Defendants, this matter is

18  dismissed with prejudice.

19      The Clerk is instructed to close the case.

20

21  **DATED:** March 28, 2025.

22

23  _____

24  **RICHARD F. BOULWARE, II**
    **UNITED STATES DISTRICT JUDGE**

25

26

27

28